**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CLIFFORD A. ZUCKER, as** | ) | |
| **LIQUIDATING TRUSTEE FOR OCONEE** | ) | |
| **REGIONAL HEALTH SYSTEMS, INC., et** | ) | **Case No.** |
| **al.,** | ) | **_____** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **JASPER HEALTH SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Clifford A. Zucker, as Liquidating Trustee (the "Plaintiff" or "Trustee") for Oconee Regional Health Systems, Inc., *et al.* (collectively, the "Debtors" or "Oconee")*,* files this Complaint against Defendant Jasper Health Services, Inc. ("Jasper" or the "Defendant"), and in support thereof, respectfully shows as follows:

### INTRODUCTION

1.     This lawsuit is filed by Oconee's duly appointed bankruptcy trustee to make Oconee whole for its uncompensated provision of goods, services, cash, and other benefits to Jasper. For the better part of two decades, Oconee provided Jasper with millions of dollars to shore up Jasper's finances and provide other support. When the tables were turned, and Oconee was desperately in need of cash, Jasper refused to repay these amounts, thereby contributing to Oconee's bankruptcy.

2.     The Debtors were a non-profit health system based in Milledgeville, Georgia which, through affiliates, operated a hospital and three clinics. The Debtors' bankruptcy filing resulted in the sale of substantially all of their assets and left creditors largely unpaid.

3.      The Defendant was one of the Debtors' affiliates and operates a hospital and skilled nursing facility in Monticello, Georgia.  Jasper did not file for bankruptcy.  Instead, the Debtors' demise left Jasper not only unscathed, but in solid financial condition.

4.      This disparity in outcomes is not an accident, as Jasper received years of benefits from the Debtors.  Accordingly, the Trustee brings this lawsuit to recover those benefits.

## PARTIES

5.      The Trustee was appointed pursuant to a Plan of Liquidation (the "Plan") which was confirmed in the Debtors' bankruptcy cases on March 23, 2018.

6.      Pursuant to the Plan, the Trustee is responsible for pursuing litigation for the benefit of Oconee's creditors, among other duties.  The Trustee is the holder of the Debtors' causes of action.

7.      The Debtors—namely Oconee Regional Health Systems, Inc. ("ORHS"), Oconee Regional Medical Center, Inc. ("ORMC"), Oconee Regional Health Services, Inc., Oconee Regional Emergency Medical Services, Inc., Oconee Regional Health Ventures, Inc., Oconee Internal Medicine, LLC, Oconee Orthopedics, LLC, ORHV Sandersville Family Practice, LLC, and Oconee Regional Senior Living, Inc.—filed chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the Middle District of Georgia on May 10 and 11, 2017 (collectively, the "Petition Date").

8.      Debtors ORHS, ORMC, Oconee Regional Health Services, Inc., Oconee Regional Emergency Medical Services, Inc., Oconee Regional Senior Living, Inc., Oconee Internal Medicine, LLC, Oconee Orthopedics, LLC, and ORHV Sandersville Family Practice, LLC are Georgia nonprofit corporations.  Debtor Oconee Regional Health Ventures, Inc. is a Georgia corporation.

9.      A corporate organization chart of the Debtors as of the Petition Date, with non-debtor affiliates including Jasper, is attached hereto as Exhibit A.

10.     Jasper is a Georgia nonprofit corporation with its principal place of business at 898 College Street, Monticello, Georgia 31064.  Jasper can be served via its registered agent, Alison Hildebrant, at that address.

11.     ORHS holds the sole membership interest in Jasper.  Pursuant to Jasper's Bylaws, its board of directors consisted of seven members, including three community members from Jasper County and four members appointed by ORHS and ORMC.  Accordingly, Oconee, and by extension the Trustee, has the right to control Jasper's board of directors.

12.     Jasper was an insider of the Debtors, as defined under the Bankruptcy Code and other applicable law, at all times relevant to this Complaint.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 because certain of the claims contained herein arise under the laws of the United States.

14.     This Court also has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) because certain of the claims contained herein arise under title 11 of the United States Code, or arise in or are related to cases under title 11 of the United States Code, namely the bankruptcy cases of the Debtors.

15.     Moreover, this Court has supplemental jurisdiction to hear this matter pursuant to 28 U.S.C. § 1367 because certain of the claims contained herein are related to claims in the action over which the Court has original jurisdiction.

16.     Jasper is subject to personal jurisdiction in Georgia because it has sufficient minimum contacts with Georgia and because these claims arise out of Jasper's activities in Georgia.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Jasper resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### A.  <u>Overview of the Debtors</u>

18.     The Debtors formerly comprised the largest comprehensive healthcare institution serving Baldwin County and seven surrounding counties, namely Greene, Hancock, Jasper, Jones, Putnam, Washington, and Wilkinson Counties.

19.     ORMC was founded in 1957, and was originally known as Baldwin County Hospital.  It was operated by Baldwin County until 1997, when ORMC was incorporated to operate the hospital pursuant to a lease agreement with the Baldwin County Hospital Authority.

20.     In August of 1998, the Baldwin County Hospital Authority issued $24,735,000 in bond debt, through an indenture trustee that was succeeded by U.S. Bank National Association, as indenture trustee (the "<u>Bond Trustee</u>").  Subsequent bond issuances occurred in 2016 and 2017.

21.     As of the Petition Date, the Debtors owed, on account of the bonds: (i) unpaid principal on the Series 1998 Bonds in the amount of $21,510,000; (ii) accrued but unpaid interest on the Series 1998 Bonds in the amount of $506,290.30; (iii) unpaid principal on the Series 2016 Bonds in the amount of $7,250,000; (iv) accrued but unpaid interest on the Series 2016 Bonds in the amount of $52,361.15; and (v) accrued and unpaid fees and expenses of the Bond Trustee and its professionals.

22.     This bond debt, which was used to fund the Debtors' operations and the operations of Jasper, bore interest at the rate of 5.3%.  However, Jasper never paid interest (with perhaps limited, below market, exceptions) for the monies, goods, or services that Oconee provided to Jasper, despite Oconee incurring considerable expense for the same.

23.     To finance the Debtors' bankruptcy cases, bonds totaling $5,000,000 were issued after the Petition Date in 2017, which bore interest at 13% per annum.

24.     During the bankruptcy cases, the Debtors sold substantially all of their assets, excepting certain causes of action and other items, to an affiliate of Navicent Health, Inc. for $12.2 million in cash.

25.     As of this date, the Debtors' bondholders, trade creditors, and most other creditors of the Debtors have not been paid in full.

**B.   Jasper, its relationship with the Debtors, the benefits received, and Jasper's resulting improved balance sheet**

26.     Jasper was incorporated as a Georgia nonprofit corporation on or about January 19, 1999.  Prior to that time, the Jasper Memorial Hospital had been operated by Jasper County.

27.     Jasper was on the verge of closing its doors before Oconee began assisting Jasper with its finances in 1999.  Jasper was so financially strapped that it was in danger of missing its payments for its employees' payroll.

28.     Oconee provided financial assistance to Jasper for the better part of two decades.

29.     The Bylaws of Jasper provide that its sole member is ORHS.[1]

30.     Between 1999 and 2017, Jasper operated as a part of the Oconee hospital system.

31.     Various Oconee officers served as members of Jasper's board of directors.

---

[1] Pursuant to the Plan, the Trustee presently holds this membership interest, as well as the right to appoint a controlling majority of Jasper's board of directors.

32.     Oconee provided a range of benefits to Jasper, and Jasper willingly participated in the Oconee hospital system.

33.     Jasper's chief administrator, Jan Gaston, regularly attended Oconee's board meetings to provide reports to Oconee's board of directors.

34.     Further, the law firm that handled Jasper's incorporation and provided other legal services to Jasper over the years also handled Oconee's legal work.

35.     Oconee also furnished Jasper with insurance, consultants, supplies, audit, cost reporting, and tax preparation services.

36.     In many instances, Oconee paid Jasper's bills.

37.     However, the nature of the debtor-creditor relationship between the Debtors and Jasper, *i.e.* that Oconee was providing Jasper with a variety of goods, services, and other support, was never disclosed to Oconee's creditors.

38.     As a result, Oconee's creditors had no ability to ascertain the benefits that Oconee conferred on Jasper over time, and that Jasper owed (and still owes) Oconee significant amounts of money.

39.     The categories of support that Oconee provided to Jasper included the provision of:

a) cash subsidies;

b) supplies;

c) management services;

d) physical therapy services;

e) salaries of Jasper employees;

f) insurance;

g) travel expenses;

h) auto allowances;

i) rentals;

j) pharmacy expenses;

k) education expenses;

l) physician recruitment expenses;

m) information technology services;

n) legal expenses;

o) interest-free extensions of credit; and

p) other items.

40.    Additionally, Jasper received significant benefits from Oconee's Medicare cost reporting.

41.    At Jasper's request, Oconee reported to the Centers for Medicare & Medicaid Services ("CMS") that certain amounts of overhead were allocated from Oconee to Jasper (*i.e.*, shifted for the purpose of the report), although Jasper did not actually pay Oconee for the overhead that reportedly was allocated.

42.    Jasper was then reimbursed by CMS or the State of Georgia for these amounts.

43.    However, Jasper never remitted these reimbursements back to Oconee to pay Oconee for the overhead that it paid on Jasper's behalf.

44.    Between 2003 and 2017, these benefits totaled not less than $3.12 million.

45.    As a result of nearly two decades of support by Oconee, Jasper stabilized, and its financial performance and balance sheet improved.

46.    When Oconee began providing assistance to Jasper in 1999, Jasper effectively had no free cash or investments.

47.    As of September 30, 2018, Jasper had cash and investments of nearly $6 million, not including its plant, property, and equipment.

### C.  Oconee's financial downfall, bankruptcy, and sale

48.     Between 1999 and 2017, Oconee's financial performance suffered greatly.

49.     Despite Oconee's suffering, it continued to confer benefits on Jasper.

50.     Oconee began losing significant amounts of money in the 2010s.  The following table summarizes Oconee's Net Income (Losses) during that time period:

| Year | Net Income |
|------|-----------|
| 2011 | ($8.6 million) |
| 2012 | ($2.3 million) |
| 2013 | ($6.5 million) |
| 2014 | ($8.8 million) |
| 2015 | ($6.3 million) |
| 2016 | ($13.9 million) |
| 2017[2] | ($8.6 million) |
| **Total** | **($55 million)** |

51.     Accordingly, while Oconee was subsidizing Jasper, and improving Jasper's financial condition by not less than $7 million, Oconee lost not less than $55 million, and was incurring interest expense at the rate of 5.3% per annum on the amounts extended on Jasper's behalf.

52.     Oconee filed chapter 11 proceedings on the Petition Date, with a plan in place to sell their assets to Prime Healthcare for $12 million plus the payment of certain cure costs related to certain contracts that would be assumed by Prime Healthcare.

---

[2] Through July 2017.

53.     Following an auction, Navicent Health, Inc. and its affiliates purchased Oconee's assets free and clear of liens, claims, and encumbrances for $12.2 million plus the payment of certain cure costs.

54.     The sale did not include Oconee's claims against Jasper, or Oconee's rights in Jasper.

55.     Various creditors filed claims in the bankruptcy cases against Oconee, totaling not less than $33.8 million.

**D.  Oconee's damages**

56.     Between 1999 and 2017, ORMC made the following transfers of cash, goods, and services to Jasper:

| Year | Amount |
|------|--------|
| 2017 | $422,558.59 |
| 2016 | $218,115.43 |
| 2015 | $217,121.72 |
| 2014 | $395,863.06 |
| 2013 | $456,115.54 |
| 2012 | $443,699.14 |
| 2011 | $539,235.04 |
| 2010 | $357,439.32 |
| 2009 | $401,478.75 |
| 2008 | $373,007.89 |
| 2007 | $396,641.21 |
| 2006 | $413,717.51 |
| 2005 | $372,846.59 |

| Year | Amount |
|------|--------|
| 2004 | $598,992.11 |
| 2003 | $808,090.21 |
| 2002 | $865,305.87 |
| 2001 | $1,105,466.50 |
| 2000 | $696,228.56 |
| 1999 | $199,508.42 |
| **Total** | **$9,281,431.46** |

(collectively, the "Intercompany Transfers", those transfers in the four years prior to the Petition Date, the "Four-Year Intercompany Transfers", and those transfers in the two years prior to the Petition Date, the "Two-Year Intercompany Transfers").

57.    Further, Jasper owes Oconee not less than $295,956.56 for goods and services supplied on an open account (the "Open Account Amounts").

58.    Despite providing Jasper with considerable time, labor, effort, and expense in management services (the "Management Services"), Oconee never charged Jasper a management fee.

59.    A proper management fee would have been based upon a percentage of Jasper's revenues, as is typical in hospital management contracts.

60.    The management fees which should have been charged over the life of the relationship between Oconee and Jasper total not less than $3.7 million (the "Management Services Amounts"), including not less than $1.355 million during the four years prior to the Petition Date (the "Four-Year Management Services Amounts") and not less than $673,846 during the two years prior to the Petition Date (the "Two-Year Management Services Amounts").

61.     Further, despite Oconee's cost of funds (*i.e.*, the rate at which it borrowed money), Jasper never paid Oconee a market rate of interest[3] on the amounts extended to Jasper.  The interest which should have been paid to Oconee by Jasper over the life of the relationship is not less than $3,719,000 in total (the "Interest Amounts"), including not less than $530,000 during the four years prior to the Petition Date (the "Four-Year Interest Amounts") and not less than $266,317 during the two years prior to the Petition Date (the "Two-Year Interest Amounts").

62.     Oconee's transfer of its overhead figures to Jasper for Medicare cost reporting purposes provided Jasper with benefits totaling not less than $3.12 million over the life of the relationship between Oconee and Jasper (the "Medicare Cost Report Transfers"), including not less than $944,000 during the Four-Years prior to the Petition Date (the "Four-Year Medicare Cost Report Transfers") and not less than $250,000 during the two years prior to the Petition Date (the "Two-Year Medicare Cost Report Transfers").

63.     After the Debtors and the Trustee made considerable efforts to settle this matter without litigation, the Trustee now brings this suit seeking recourse against Jasper for Oconee's damages.

## COUNT I – OPEN ACCOUNT

64.     The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

65.     Oconee and Jasper had running and/or concurrent dealings.

66.     These dealings have not been closed, settled, or stated.

67.     As of the Petition Date, further transactions were contemplated between the Oconee and Jasper.

---

[3] Upon information and belief, a small amount of interest (roughly 2% per annum) was charged for certain cash loaned by Oconee to Jasper.

68.     Oconee's records reflect that the Open Account Amounts are due to the bankruptcy estate as a result of these dealings.

69.     Neither the Trustee, the Debtors, nor the bankruptcy estates have received the Open Account Amounts.

70.     Based on this account stated, the Trustee is entitled to a judgment against the Defendant for not less than the value of the Open Account Amounts.

## COUNT II - UNJUST ENRICHMENT

71.     The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

72.     Jasper was unjustly enriched by receiving the Intercompany Transfers, Management Services Amounts, interest free extensions of credit, the Medicare Cost Report Transfers, and the Open Account Amounts.

73.     Jasper knowingly accepted and retained the Four-Year Intercompany Transfers, the Four-Year Management Services Amounts, the Four-Year Interest Amounts, the Four-Year Medicare Cost Report Transfers, and the Open Account Amounts.

74.     Oconee had a reasonable expectation of compensation for the Four-Year Intercompany Transfers, the Four-Year Management Services Amounts, the Four-Year Interest Amounts, the Four-Year Medicare Cost Report Transfers, and the Open Account Amounts.

75.     Jasper holds or held property which, in equity and good conscience, belongs to Oconee.

76.     Retention of the Four-Year Intercompany Transfers, the Four-Year Management Services Amounts, the Four-Year Interest Amounts, the Four-Year Medicare Cost Report Transfers, and the Open Account Amounts, or the value thereof, by Jasper is unjust.

77.     Accordingly, the Trustee is entitled to recover the value of the Four-Year Intercompany Transfers, the Four-Year Management Services Amounts, the Four-Year Interest Amounts, and the Four-Year Medicare Cost Report Transfers, and the Open Account Amounts from Jasper.

## COUNT III – FRAUDULENT TRANSFERS (11 U.S.C. §§ 544(B), 550 AND 551 AND O.C.G.A. § 18-2-70 *et seq.*)

**(Actual Fraud for the Intercompany Transfers, the Management Services, the Medicare Cost Report Transfers, and all other transfers from the Debtors to Jasper)**

78.     The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

79.     The Debtors made transfers, as such term is defined under O.C.G.A. § 18-2-71(16), to or for the benefit of Jasper on or within 18 years[4] of the Petition Date.

80.     These fraudulent transfers include, but are not limited to, the Intercompany Transfers, the Management Services, and the Medicare Cost Report Transfers.

81.     The Debtors transferred the Intercompany Transfers, the Management Services, and the Medicare Cost Report Transfers with actual intent to hinder, delay, or defraud creditors.

82.     The Debtors' actual intent is evidenced by, without limitation, the following badges of fraud:

a) the Debtors were insolvent at the time of the payment of some or all of these transfers;

b) these transfers were paid to an insider of the Debtors which was aware of the financial peril the Debtors were facing;

c) Jasper was aware of the Debtors' insolvency, debt structure, and inability to recover;

---

[4] Pursuant to O.C.G.A. § 18-2-79(1), the Trustee is entitled to avoid all transfers made to Jasper in excess of four years because the transfers could not reasonably have been discovered by creditors until the Debtors' bankruptcy filing.  This claim is brought within two years of the Debtors' bankruptcy filing and is, therefore, timely pursuant to 11 U.S.C. § 546.

d) these transfers were paid occurred shortly before or shortly after a substantial debt was incurred;

e) these transfers were unreasonably high in light of the consideration rendered by Jasper; and

f) certain portions of these transfers were hidden or concealed.

83.     Pursuant to 11 U.S.C. § 550(a), each of the aforementioned transfers is recoverable against the initial transferee of the transfers as well as the mediate and immediate transferees of such transfers.

## COUNT IV – FRAUDULENT TRANSFERS (11 U.S.C. §§ 544(B), 550 AND 551 AND O.C.G.A. § 18-2-70 *et seq.*)

**(Constructive Fraud for the Management Services, the Medicare Cost Report Transfers, and all other transfers from the Debtors to Jasper)**

84.     The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

85.     The Debtors made transfers to or incurred obligations for the benefit of Jasper on or within 18 years[5] of date of the Petition Date.  These fraudulent transfers or obligations include, but are not limited to, the Intercompany Transfers, the Management Services, the Medicare Cost Report Transfers, the Four-Year the Intercompany Transfers, the Four-Year Management Services Amounts, the Four-Year Medicare Cost Report Transfers, and all other transfers from the Debtors to Jasper.

---

[5] Equitable tolling applies to toll the four-year statute of limitations contained in O.C.G.A. § 18-2-79(2) because the transfers at issue were not discoverable by the Debtors' creditors as they were hidden by Oconee's management.  *See* O.C.G.A. § 18-2-82; *Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, 2016 U.S. Dist. LEXIS 43974 (M.D. Ga., Mar. 13, 2016).

86.     The Debtors did not receive reasonably equivalent value in exchange for these transfers because the consideration purportedly provide in exchange for same were either non-existent or not reasonably equivalent.

87.     At the time the transfers were made, the Debtors (a) were engaged in a business or a transaction, or were about to engage in a business or transaction, for which the assets remaining with the Debtors were unreasonably small in relation to the business or transaction and/or (b) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured and/or (c) were insolvent or became insolvent as a result of the transfers.

88.     Pursuant to 11 U.S.C. § 550(a), each of the aforementioned transfers is recoverable against the initial transferee of the transfers as well as the mediate and immediate transferees of such transfers.

## COUNT V - FRAUDULENT TRANSFER (11 U.S.C. §§ 548(a)(1)(A) AND 550)

**(Actual Fraud for the Two-Year Intercompany Transfers, the Two-Year Management Services Amounts, and the Two-Year Medicare Cost Report Transfers)**

89.     The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

90.     The Debtors made transfers or incurred obligations for the benefit of Jasper on or within two years of the Petition Date.  These fraudulent transfers include, but are not limited to: the Two-Year Intercompany Transfers, the Two-Year Management Services Amounts, and the Two-Year Medicare Cost Report Transfers which were made within two years of the Petition Date.

91.     These transfers were made by the Debtors with the actual intent to hinder, delay, and/or defraud some or all of the Debtors' then existing or future creditors, as evidenced by the badges of fraud referenced above.

92.     These transfers and obligations constitute fraudulent transfers avoidable by the Trustee pursuant to sections 548(a)(1)(A) of the Bankruptcy Code and are recoverable from Jasper pursuant to section 550(a).

93.     As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code (a) avoiding and preserving each transfer to Jasper on or within two years prior to the Petition Date, as well as all obligations relating to same, (b) directing that those transfers and obligations be set aside, and (c) recovering those transfers, or the value thereof, from Jasper, and any mediate and immediate transferees of same.[6]

94.     Pursuant to 11 U.S.C. § 550(a), each of the aforementioned transfers is recoverable against the initial transferee of the transfers as well as the mediate and immediate transferees of such transfers.

**COUNT VI – FRAUDULENT TRANSFER (11 U.S.C. §§ 548(a)(1)(B) AND 550)**

**(Constructive Fraud for the Two-Year Intercompany Transfers, the Two-Year Management Services Amounts, and the Two-Year Medicare Cost Report Transfers)**

95.     The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

96.     The Debtors made transfers or incurred obligations for the benefit of Jasper on or within two years of the Petition Date.  These fraudulent transfers include, but are not limited to, the Two-Year Intercompany Transfers, the Two-Year Management Services Amounts, and the Two-Year Medicare Cost Report Transfers.

---

[6] Moreover, pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover from all initial transferees or the immediate or mediate transferees of such initial transferees, or the person for whose benefit the transfers were made, plus interest thereon to the date of payment and the costs of this action.  Should additional transferees be discovered, the Trustee reserves the right to seek leave of Court to amend the Complaint and name such transferees as Defendants in this action.

97.     The Debtors received less than a reasonably equivalent value in exchange for the transfers.   At the time the transfers were made, the Debtors were each insolvent or became insolvent as a result of such transfers.

98.     At the time the transfers were made, the Debtors (a) were engaged in a business or a transaction, or was about to engage in a business or transaction, for which the assets remaining with the Debtors were unreasonably small in relation to the business or transaction and/or (b) intended to incur or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

99.     These transfers constitute fraudulent transfers avoidable by the Trustee pursuant to sections 548(a)(1)(B) of the Bankruptcy Code and are recoverable from Jasper pursuant to section 550(a).

100.    As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code (a) avoiding and preserving each transfer to Jasper on or within two years prior to the Petition Date, (b) directing that those transfers be set aside, and (c) recovering those transfers, or the value thereof, from Jasper, and any mediate and immediate transferees of same.

101.    Pursuant to 11 U.S.C. § 550(a), each of the aforementioned transfers is recoverable against the initial transferee of the transfers as well as the mediate and immediate transferees of such transfers.

## COUNT VII – RECOVERY OF AVOIDED TRANSFERS (11 U.S.C. § 550)

102.    The Trustee realleges the allegations contained in paragraphs 1-63, which are incorporated by reference as if set forth fully herein.

103.     Jasper was the initial transferee of the transfers at issue in this Complaint, the immediate or mediate transferee of such initial transferees, or the person(s) for whose benefit the transfers were made.

104.     Pursuant to 11 U.S.C. § 550(a), the Trustee is entitled to recover the transfers at issue in this Complaint from Jasper, plus interest thereon to the date of payment and the costs of this action.

<u>**PRAYER FOR RELIEF**</u>

Based on the foregoing, the Trustee requests that the Court enter an order awarding the Trustee all actual and consequential damages against Jasper, including pre- and post-judgment interest, court costs, attorney's fees, avoidance of the fraudulent transfers, recovery of all amounts transferred to or for the benefit of the Defendant, and all such other relief that the Trustee is entitled to under law and equity.

Respectfully submitted this 10th day of April, 2019.

GREENBERG TRAURIG, LLP

        /s/  John D. Elrod
John D. Elrod
Georgia Bar No. 246604
Benjamin Keck
Georgia Bar No. 943504
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2269 Facsimile
elrodj@gtlaw.com
keckb@gtlaw.com
*Counsel for Plaintiff Clifford Zucker, as Liquidating*
*Trustee of Oconee Regional Health Systems, Inc., et al.*